**U**NITED **S**TATES **D**ISTRICT **C**OURT
**F**OR THE **N**ORTHERN **D**ISTRICT OF **I**LLINOIS
**E**ASTERN **D**IVISION

| | | |
|---|---|---|
| B̲RYAIN J. Y̲OUNG, | ) | |
| | ) | |
| P̲LAINTIFF, | ) | |
| | ) | No. 15-cv-2412 |
| v. | ) | |
| | ) | |
| S̲ALEH O̲BAISI, M.D., A̲NDREW H. | ) | Judge Thomas M. Durkin |
| T̲ILDEN, M.D., W̲EXFORD H̲EALTH | ) | |
| S̲OURCES, I̲NC., M̲ARCUS H̲ARDY, | ) | |
| M̲ICHAEL L̲EMKE, AND R̲ANDY P̲FISTER, | ) | |
| | ) | |
| D̲EFENDANTS. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Plaintiff Bryain J. Young brings this Eighth Amendment deliberate indifference action against Defendants Dr. Saleh Obaisi (Medical Director, Stateville Correctional Center), Dr. Andrew H. Tilden (Medical Director, Pontiac Correctional Center), their employer and public contractor Wexford Health Sources, Inc. ("Wexford"), Wardens Marcus Hardy and Michael Lemke (Stateville Correctional Center), and Warden Randy Pfister (Pontiac Correctional Center) (collectively, "the Defendant Wardens"). R. 10. Dr. Obaisi, Wexford, and the Defendant Wardens separately move to dismiss the complaint for failure to state a claim upon which relief may be granted. Alternatively, Wexford and Warden Pfister are joined by Dr. Tilden (collectively, "the Pontiac Defendants") and Dr. Obaisi in moving to sever the claims that accrued at Pontiac Correctional Center ("the Pontiac claims") and transfer them to the Central District of Illinois. For the

reasons explained below, Dr. Obaisi's motion to dismiss [29] is denied; Wexford and the Defendant Wardens' motions to dismiss [23] [39] are granted in part and denied in part; Wexford and Warden Pfister's motions to sever [23] [37] are denied as moot; and Dr. Obaisi and Dr. Tilden's motions to sever [29] [52] are denied.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Young has been in the custody of the Illinois Department of Corrections at all times relevant to this suit. On December 4, 2012, he injured his left knee during an approved recreational basketball game at Stateville Correctional Center. R. 10 ¶ 8. The injury caused Young immediate pain and discomfort. *Id.* Young saw Dr. Obaisi for treatment that same day, and Dr. Obaisi ordered an x-ray and prescribed naproxen.[1] *Id.* ¶ 9. The results of that x-ray are not pled. Dr. Obaisi authorized Young's use of crutches on December 6, 2012 for one day only. *Id.* ¶ 10. Dr. Obaisi continued to prescribe naproxen throughout January 2013.

On February 11, 2013, Young requested another appointment with Dr. Obaisi because his knee pain and swelling continued. *Id.* ¶ 12. He was not seen at that time. *Id.* ¶ 13. Young again requested to see a doctor on April 3, 2013. *Id.* ¶ 14. He was seen by a physician on April 9, who prescribed naproxen. *Id.* ¶ 15. On May 9, 2013, Dr. Obaisi again saw Young for knee pain. *Id.* ¶ 16. At this visit, Dr. Obaisi noted left knee swelling and administered a steroid injection. *Id.* On June 6, 2013, Dr. Obaisi again noted left knee swelling and ordered another steroid injection. *Id.* ¶ 17. Young did not receive that injection until June 27, 2013. *Id.* His knee pain continued. *Id.* ¶ 18.

Dr. Obaisi saw Young again on September 19, 2013 for treatment of his knee injury. *Id.* ¶ 19. At this visit, Dr. Obaisi approved a referral to an outside

---

[1] Naproxen is a nonsteroidal anti-inflammatory medication used to relieve pain from various conditions. *See* WebMD, *Drugs & Medications: Naproxen*, http://www.webmd.com/drugs/2/drug-5173-1289/naproxen-oral/naproxen-oral/details (last visited Dec. 4, 2015).

orthopedist. *Id.* Several months passed, and no visit to the orthopedist was scheduled.

On January 1, 2014, Young was transferred to Pontiac Correctional Center, *id.* ¶ 27, where Young alleges that Dr. Tilden "knew or should have known" that his visit to an outside orthopedist had been previously approved by Dr. Obaisi, *id.* ¶ 30. Young finally did see an orthopedist in Chicago on May 14, 2014—five months after his transfer to Pontiac, eight months after his referral to an orthopedist was approved, and well over a year after he sustained his left knee injury. *Id.* ¶ 30. The orthopedist suspected a possible meniscus tear, a possible ACL or other ligament tear, and recommended an MRI. *Id.* It was not until another four months had passed, on September 18, 2014, that the MRI was actually performed. *Id.* ¶ 21. The MRI showed meniscus tears and an ACL injury. *Id.* Young does not allege what the outside orthopedist recommended for treatment, whether those recommendations were followed, or the current state of his knee injury.

Young alleges that Dr. Obaisi and Dr. Tilden were deliberately indifferent to his medical needs, causing him unnecessary and prolonged left knee pain, discomfort, suffering, and disability. *Id.* at 4 (Obaisi, Count I), 6 (Tilden, Count II). He also alleges that Wexford is liable for the deliberate indifference of its employees, *id.* ¶ 56 (Count III), and that the Defendant Wardens failed to ensure that he was provided adequate medical care, *id.* ¶¶ 78 (Hardy, Count IV), 102 (Lemke, Count V), 114 (Pfister, Count VI).

**Discussion**

## I.    **Deliberate Indifference**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim based on deficient medical care, a plaintiff must show (1) that he suffered an objectively serious risk of harm, and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

### A.    Dr. Saleh Obaisi

"Prison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Dr. Obaisi does not challenge the objective seriousness of Young's injury. Rather, he argues that Young has failed to allege facts "establish[ing] that Dr. Obaisi showed total unconcern for Plaintiff's welfare." R. 30 at 4. Dr. Obaisi contends that Young cannot establish deliberate indifference because during the time Young was at Stateville, he was promptly seen and treated for his knee pain and swelling upon request on all but one occasion. *Id.* at 4-5 (noting that Young was seen seven times between the date of his injury and his transfer just over a year later). To the extent Young's claim is premised on the delay between Dr. Obaisi's referral to the orthopedist and the date Young was actually seen by the orthopedist,

5

Dr. Obaisi argues that he lacked any control over the orthopedist's calendar and therefore cannot be held accountable. *Id.* at 4.

The receipt of some medical care does not automatically defeat a claim of deliberate indifference. *Perez*, 792 F.3d at 777. In other words, a prisoner need not show that his medical needs were "literally ignored" to state a viable claim for relief. *Arnett*, 658 F.3d at 751. "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers blatantly inappropriate medical treatment, acts in a manner contrary to the recommendations of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez*, 792 F.3d at 777 (internal quotations and citations omitted).

Young plausibly alleges that Dr. Obaisi was deliberately indifferent to his medical needs in failing to promptly schedule a consultation with an outside orthopedist. By the time that referral was made, Dr. Obaisi was aware that the pain and swelling had persisted in Young's left knee for roughly ten months despite a regular course of naproxen and two cortisone injections. In making the referral, Dr. Obaisi was acknowledging a need for a specialist's care. Still, he let Young wait for months without securing an appointment. Under very similar facts, courts have held that plaintiffs have sufficiently pled their claim. *See, e.g., Sharif v. Ghosh*, No. 12-cv-2309, 2013 WL 228239, at *4 (N.D. Ill. Jan. 18, 2013) (denying a prison physician's motion to dismiss where four months passed between the date the physician ordered an MRI of the inmate's injured knee and the date the MRI was

finally performed); *see also McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010) (collecting authority regarding when a delay in treatment is sufficient to state a claim for deliberate indifference). Perhaps there is a valid medical reason for these delays. Perhaps the delays were caused by events outside of Dr. Obaisi's control. If true, that will have to have to await discovery and a possible summary judgment motion. The Court denies Dr. Obaisi's motion to dismiss.

B.    Wexford Health Sources

Dr. Obaisi and Dr. Tilden's employer, Wexford Health Sources, is a corporation that contracts with Stateville and Pontiac to provide healthcare to inmates. R. 6 ¶¶ 39. Contractors like Wexford are treated the same as municipalities for purposes of liability under § 1983. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). Accordingly, to state a claim against Wexford, Young must state facts indicating that Wexford maintained a policy or practice that violated his right to adequate medical care and that the policy or practice directly caused him harm. *Id.*

Young does not allege a policy or practice of Wexford's that led to or exacerbated his injuries. Instead, he pleads Wexford's liability for the "errors and/or omissions" of its employees, R. 10 ¶ 56, suggesting that their alleged mishandling of his injury over nearly two years "rais[es] a question of a policy or custom of deliberate disregard for medical care," R. 47 at 2. Young concedes that this highly speculative and extremely vague allegation against Wexford would not survive summary judgment. R. 47 at 4. He asks, however, that the Court grant him leave

"to proceed beyond the pleading stage and through discovery in order to investigate the presence of such a policy or practice." R. 47 at 7. The Court will not permit Young to embark on a fishing expedition. Unless he can allege in good faith a policy or practice underlying Wexford's alleged inadequate provision of medical care, his deliberate indifference claim against Wexford cannot stand. *See Sharif,* 2013 WL 228239 at *6 (dismissing a claim against Wexford where the plaintiff "only speculate[d]" that a policy existed to refuse referrals in order to save money); *see also Jones v. Feinerman,* No. 09-cv-3916, 2011 WL 4501405, at *6 (N.D. Ill. Sept. 28, 2011) (holding that where the series of bad acts pled was limited only to the plaintiff's own treatment, the bad acts could not be considered a "pattern" from which a policy could be inferred). Count III is therefore dismissed without prejudice.

C.     Wardens Marcus Hardy, Michael Lemke and Randy Pfister

The subjective element of a deliberate indifference claim cannot be premised upon a theory of *respondeat superior. See Arnett v. Webster,* 658 F.3d 742, 757 (7th Cir.2011). Thus, a plaintiff's allegations against a nonmedical prison official only satisfy "the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at [the official's] direction or with his knowledge and consent." *Arnett,* 658 F.3d at 757. "That is, [the official] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id.*

Young does not allege a single fact suggesting any of the Defendant Wardens knew about his injury or impeded his treatment in any way.[2] He does not, for example, allege that he directed any complaints to the Defendant Wardens, that they failed to sign off on his referral to the orthopedist or for an MRI, or any other specific conduct or circumstances linking the Defendant Wardens to Young's injuries. All Young asserts are the conclusory allegations that as wardens, Hardy, Lemke, and Pfister "had an obligation to . . . ensure that adequate medical access, care, and treatment were offered to inmates," R. 10 ¶¶ 78, 102, 114, and that given this obligation, they "knew or should have known" about Young's injury and medical needs, *id.* ¶¶ 79, 103, 115. Absent a showing of personal involvement as to each of the Defendant Wardens, Young's claims against them cannot stand.[3] Counts IV-VI are therefore dismissed without prejudice.

---

[2] Young's reliance on *Ferguson v. Wexford Health Sources, Inc.*, No 15-cv-947, 2015 WL 5675837 (S.D. Ill. Sept. 28, 2015), is misplaced. In *Ferguson*, the plaintiff alleged that he directed two emergency grievances regarding his medical condition to the warden, which were ignored. *Id.* at *1. On that basis, the court held that the plaintiff's claim against the warden was not frivolous and therefore survived preliminary review pursuant to 28 U.S.C. § 1915A. Young has not alleged that he filed any grievances over his treatment, much less that they were received or ignored (or otherwise mishandled) by the Defendant Wardens. This case is therefore distinguishable from *Ferguson*.

[3] The wardens also argue that they are entitled to qualified immunity. They are not. *See Hayes v. Snyder*, 546 F.3d 516, 528 (7th Cir. 2008) ("It has been established for decades that prison physicians violate inmates' constitutional rights when they deliberately disregard an inmate's serious medical condition."). If Young is able to amend his complaint to adequately allege personal involvement, qualified immunity will not shield the Defendant Wardens from liability.

## II.     Severance and Transfer[4]

Under Federal Rule 21, district courts have discretion to sever any claims that are "discrete and separate in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 Fed. Appx. 508, 513 (7th Cir. 2015) (internal quotations omitted).  Dr. Obaisi and Dr. Tilden assert that Young's claims against them should be severed because "Plaintiff is not alleging that the Stateville Defendants had anything to do with the Pontiac claims, and is not alleging that the Pontiac Defendants had any involvement in the Stateville [c]laim[s]." R. 30 at 6; R. 53 at 3. Dr. Tilden asserts that he and Dr. Obaisi would be prejudiced by a single trial because joinder of the claims against them would "imply[ ] that the Pontiac Defendants had some control over what happened at Stateville, and vice versa." R. 53 at 4. Dr. Obaisi concedes that severing the claims would result in duplicate presentation of relevant evidence, but urges that "this is a necessary result of having two separate and distinct causes of action, related to treatment by different physicians, while Plaintiff was housed in two different institutions." R. 61 at 5 (also noting that any added expense could be minimized "by the use of witnesses who appear remotely by video"). Because the claims are capable of independent resolution, *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2006), the doctors argue they should be decided separately.

---

[4]     Because the Court has already dismissed Claim III against Wexford and Claim VI against Warden Pfister, their respective motions for severance [23] [37] are denied as moot. However, should Young adequately replead his case against these defendants, the Court's discussion here regarding Dr. Obaisi and Dr. Tilden's motions to sever should be considered notice of the law of the case.

Young responds that the Defendants are properly joined. R. 48 at 3-6. Federal Rule of Civil Procedure 20(a)(2) permits joinder of defendants when a right to relief against them arises from a common occurrence or series of occurrences or involves common questions of law or fact. Young contends that Defendants are properly joined because "[w]hile [Young's] physical location may have changed . . . his complaints of knee pain remained the same; his need for treatment remained the same; and the alleged inadequate medical care remained the same." *Id.* at 5. He argues that his deprivation is most fairly presented across its entire 21-month timespan and that he would be prejudiced (and the Defendants advantaged) by two separate cases regarding shorter periods of pain, suffering and disability. *Id.* at 5-6. Young also notes a number of inefficiencies that would result from severance, including duplicate presentation of witnesses and evidence, and the need for the Department of Corrections to transport him to two different venues for the proceedings. *Id.* at 5.

Young has the better of the arguments. The injury he alleges was discreet and continuous, beginning with a basketball injury at Stateville and continuing until treatment was rendered from Pontiac.[5] While certain evidence will only be

---

[5] Defendants direct the Court to a few prisoner civil rights cases where severance was determined to be proper. To say those cases are distinguishable understates just how different the facts of those cases are from the facts here. *See, e.g., Wheeler v. Wexford*, 689 F.3d 680, 683 (7th Cir. 2012) (noting that joinder of 36 defendants, "several of whom have no conceivable relation to [the plaintiff's medical care" should not be countenanced); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (requiring severance where the plaintiff asserted 50 claims against 24 defendants); *Washington v. Hodges*, No. 12-cv-854, 2013 WL 3200452, at *1 (S.D. Ill. June 24, 2013) (plaintiff's forty-page complaint was organized into 15 entirely

relevant to claims against one defendant doctor or the other, a host of common questions of law and fact pertain equally to both claims. The key witness in the case–the outside orthopedist–works here in Chicago; the doctor would have to testify twice (and at great inconvenience in the Central District) if the claims were severed. Defendants' concern about jury confusion is overstated. Simply testifying that neither has any control over the other's operations would ameliorate any prejudice occasioned by a joint trial. An instruction to the jury could also be fashioned. Plaintiff is entitled to tell his version of the events from start to finish, either in one trial or two. A single trial would be more efficient. Accordingly, Defendants' motions to sever are denied.[6]

## Conclusion

For the reasons stated, Dr. Obaisi's motion to dismiss [29] is denied; Wexford and the Defendant Wardens' motions to dismiss [23] [39] are granted in part and denied in part; Wexford and Warden Pfister's motions to sever [23] [37] are denied as moot; and Dr. Obaisi and Dr. Tilden's motions to sever [29] [52] are denied. Young is granted leave to replead within 21 days of the date of this Order. If no

unrelated claims (some with multiple parts) against 27 different defendants). The Seventh Circuit requires severance of "a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions." *George*, 507 F.3d at 607. That is far from what Young has done in joining the Defendants in this action.

[6]     In requesting severance and transfer, Defendants do not argue that venue is improper here in the Northern District. Nor could they. Section 1391(b) permits an action to be brought in a judicial district in which any defendant resides if all defendants are residents of the same state or in any judicial district where a substantial part of the events giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b)(1)-(2). Under either theory, venue here is proper.

amended pleading is filed, Wexford Health Sources, Inc., Marcus Hardy, Michael Lemke, and Randy Pfister will be dismissed from this matter with prejudice.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated:  December 7, 2015