UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAIN J. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-2412 |
| v. | ) | |
| | ) | |
| GHALIAH OBAISI, as Independent | ) | |
| Executor for the Estate of Saleh Obaisi, and | ) | |
| ANDREW H. TILDEN, M.D., | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bryain J. Young brought this Eighth Amendment deliberate indifference action against Dr. Saleh Obaisi (Medical Director, Stateville Correctional Center) and Dr. Andrew H. Tilden (Medical Director, Pontiac Correctional Center), as well as other defendants that have since been dismissed. Before the Court now are Drs. Obaisi and Tilden's motions for summary judgment. For the following reasons, both motions are denied.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To

1

defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background[1]

Young has been in the custody of the Illinois Department of Corrections at all times relevant to this suit. The following facts are undisputed unless otherwise noted.

### A. Stateville Correctional Center

On December 4, 2012, Young injured his left knee playing basketball at Stateville Correctional Center. R. 174 ¶ 10. Young saw Dr. Obaisi for treatment that same day, and Dr. Obaisi ordered an x-ray, authorized the use of crutches, and prescribed Naproxen. R. 188 ¶ 2.

---

[1] Drs. Obaisi and Tilden both filed motions to strike certain facts offered by Young in his statements of additional facts. R. 185, 186. Motions to strike are disfavored. *Hare v. Zitek*, 414 F. Supp. 2d 834, 852 (N.D. Ill. Dec. 5, 2005) ("Several judges in this district have pointed out that motions to strike additional statements of facts, while permissible, are often unnecessary, because a party has a chance to dispute the statement in a reply, and because statements unsupported by facts will be disregarded."). *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006) (strongly criticizing motions to strike on appeal). While defendants characterize Young's statements as inappropriate under Rule 56.1, the motions to strike simply serve to dispute the facts Young offered. Accordingly, defendants' motions to strike are denied. The Court treats the facts contained in the motions to strike as if they were filed in response to Young's statements of additional facts.

On May 9, 2013, five months after his injury, Young saw Dr. Obaisi again for knee pain. *Id.* ¶ 4. At this visit, Dr. Obaisi noted left knee swelling and administered a steroid injection. *Id.* ¶¶ 4, 6. On June 20, 2013, Dr. Obaisi again noted left knee pain and swelling and ordered another steroid injection. *Id.* ¶ 7.

Dr. Obaisi saw Young again on September 19, 2013 for treatment of his knee injury. *Id.* ¶ 11. Dr. Obaisi noted swelling and Young reported no improvement from the two steroid injections. *Id.* At that visit, Dr. Obaisi prescribed a knee brace and approved a referral to an outside orthopedist. R. 174 ¶¶ 40, 41. No orthopedist visit was scheduled in 2013. *See* R. 156 ¶ 28.

On October 19, 2013, ten months after the initial injury, Dr. Obaisi authorized Young for a low bunk/low gallery permit. R. 174 ¶ 53.

## B. Pontiac Correctional Center

On January 1, 2014, Young was transferred to Pontiac Correctional Center and to the care of Dr. Tilden. Dr. Tilden first saw Young on February 20, 2014, just two months after Young's transfer. R. 178 ¶ 39. After Young informed him of his injury, Dr. Tilden contacted the referral coordinator to speed up the orthopedic referral. *Id.* ¶ 41. Dr. Tilden approved the orthopedic consult and Young was seen by a specialist on May 14, 2014. *Id.* ¶ 32. The orthopedic specialist recommended an MRI. R. 174 ¶ 56. Based on the specialist's findings, Dr. Tilden authorized a permit for a low bunk/low gallery and a knee brace on May 16, 2014. R. 188 ¶ 15. Young's MRI took place on September 18, 2014. R. 174 ¶ 57. It showed a medial meniscus tear as well as a chronic ACL tear. *Id.* ¶ 58.

After the MRI, Young saw the orthopedist again on February 18, 2015. *Id.* ¶ 57. The orthopedist recognized the seriousness of the injury and referred Young to another specialist, Dr. Marcus. *Id.* On July 1, 2015, Dr. Marcus recommended a formal physical therapy program and stated that he wanted to follow-up with Young in three months. *Id.* ¶ 58. Young, however, received only one session of physical therapy and did not return to Dr. Marcus for another year, on July 20, 2016. R. 188 ¶ 16.; R. 174 ¶ 59. At that point, Dr. Marcus recommended surgery because Young had failed non-operative management. R. 174 ¶ 59. Young underwent surgery to repair his ACL tear and medial meniscus tear in August of 2016. *Id.* ¶ 60.

Young brought this case alleging that Drs. Obaisi and Tilden were deliberately indifferent to his medical needs, causing him unnecessary and prolonged left knee pain, discomfort, suffering, and disability.

## Discussion

### I. Deliberate Indifference

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim based on deficient medical care, a plaintiff must show (1) that he suffered an objectively serious risk of harm, and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

To satisfy the objective element, a medical condition must be "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). At the same time, however, "[t]he Constitution is not a charter of protection for hypochondriacs." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

To satisfy the subjective state of mind element, an inmate does not have to show that the prison official actually intended or wanted to harm him; it is enough that the official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Edwards*, 478 F.3d at 831. This standard is higher than mere negligence— medical malpractice or a disagreement with a doctor's medical judgment does not give rise to a constitutional claim for deliberate indifference. *Id.* at 831; *Gayton*, 593 F.3d at 622-23. Similarly, an inmate is not entitled to "demand specific care" or the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 266-67 (7th Cir. 1997).

A prison doctor may exhibit deliberate indifference to a known condition (i) "through inaction," (ii) "by persisting with inappropriate treatment," or (iii) "by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain." *Gatson v. Ghosh*, 498 Fed. Appx. 629, 631-32 (7th Cir. 2012) (citations omitted). If an inmate alleges that a particular treatment decision

5

was erroneous, "[d]eliberate indifference may be inferred . . . only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Gayton*, 593 F.3d at 622-23.

The parties do not dispute that Young's knee pain was an objectively serious medical condition. The Court will address each defendant's arguments on the subjective element separately.

### A. Dr. Saleh Obaisi

Dr. Obaisi argues that Young cannot show that he was deliberately indifferent (1) in his referral to an orthopedic specialist; and (2) in providing sufficient pain management.

#### 1. Referral to Specialist

Although Young was injured in December 2012, Dr. Obaisi did not refer him to an orthopedic specialist until September 19, 2013. Dr. Obaisi argues that he acted reasonably because he attempted conservative methods first. While Young does not dispute Dr. Obaisi properly attempted conservative treatments, the record does indicate that Dr. Obaisi failed to follow the appropriate standard of care in timely referring Young to a specialist and ensuring Young actually saw a specialist, causing Young prolonged pain. R. 188 ¶ 19; R. 156-6 at 183:18-184:13. After all, Young could not make an appointment with a specialist himself. For that, he had to rely on Dr. Obaisi.

There is also evidence that Dr. Obaisi did not follow Wexford policies and procedures in making the referral. Wexford policies and procedures provide that a referral to a specialist should be made where chronic knee pain has been present for six months. R. 188 ¶ 8. Here, Dr. Obaisi did not refer Young until he exhibited chronic knee pain for nine months. Even then, Young did not see an orthopedic specialist before he was moved from Stateville three months later. Dr. Obaisi's failure to follow Wexford polices supports Young's argument that Dr. Obaisi was deliberately indifferent in his delay of referring Young to a specialist for further treatment. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), *as amended* (Aug. 25, 2016) ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm.").

Dr. Obaisi argues that despite any delay, Young's care management did not change, and thus Young cannot prove causation. "In cases where prison officials delayed rather than denied medical assistance to an inmate," the plaintiff must "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013). Here, over a year and a half passed between when Young injured his knee in December 2012 and when he first saw a specialist in May 2014 (though Dr. Obaisi was responsible for Young's care only through December 2013).

"Causation is normally a matter for the jury." *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015). While it is true that Young was not prescribed surgery until after

7

several visits with the specialist, there is support in the record that the delay in Dr. Obaisi referring him to a specialist in the first place prolonged Young's pain and discomfort. *See* R. 156-6 at 183:18-184:13.

Accordingly, the Court finds a reasonable jury could find Dr. Obaisi was deliberately indifferent in his delay in referring Young to a specialist. *See Hardy v. Hardy*, 2013 WL 12394908, at *7 (N.D. Ill. Aug. 29, 2013) (finding seven-month delay between injury and referral to an orthopedic specialist was sufficient to defeat summary judgment as to deliberate indifference).

### 2. Pain Management

Dr. Obaisi also argues that he was not deliberately indifferent to Young while prescribing pain medication, referring Young for an MRI, and prescribing non-medicinal alternatives such as a knee brace and a low bunk/low gallery permit. While the parties separately discuss these treatments, the Court finds that they are better discussed in conjunction in determining whether Dr. Obaisi was deliberating indifferent to Young's pain. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) ("We examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs.").

Here, Dr. Obaisi argues he was not deliberately indifferent to Young because he prescribed Naprosyn for his pain and allowed his prescription to be refilled as necessary. Dr. Obaisi also performed two steroid injections into the knee to see if the

8

condition would resolve. Dr. Obaisi did not order an MRI at any point during his treatment of Young.

There is a genuine dispute of fact as to whether Dr. Obaisi was deliberately indifferent in managing Young's pain. Dr. Steven Tureff[2] testified that, in his opinion, Dr. Obaisi's failure to image Young's knee and identify the diagnosis before administering two pain injections constituted a violation of the standard of care. R. 156-6 at 20:12-23:24. Further, despite Dr. Obaisi's pain regiment, Young consistently complained of ongoing, unresolved pain while under Dr. Obaisi's care. *See* R. 156-5 at 45:14-18; 53:8-9; 55:2-13.

Dr. Obaisi's delay in approving a knee brace and a low bunk/low gallery for Young further supports that Dr. Obaisi was indifferent to Young's pain. Dr. Tureff testified that the use of a knee brace could have provided comfort (in the form of less pain) for Young. R. 188 ¶ 22. Yet Dr. Obaisi did not approve a knee brace for Young until September 19, 2013—nine months after Young was injured. R. 156-5 at 55:20-22. Dr. Obaisi himself testified that he finally did so because it was a comfort method. *Id.* at 56:4-11. Likewise, Dr. Obaisi did not provide Young with a low bunk/low gallery

---

[2] Dr. Steven Tureff is Young's expert. Defendants argue that Young has no case because Dr. Tureff testified that the doctors' actions only rose to the level of negligence. R. 178 ¶ 78. But Dr. Tureff also testified that the doctors were indifferent to Young because "they were in a position to expedite his care on multiple instances and did not do so." R. 155-6 at 188:20-89:1. Although evidence of mere negligence by itself is insufficient, the defendants do not argue (nor could they) that Dr. Tureff's testimony is the only evidence Young has of the doctors' alleged deliberate indifference. Dr. Tureff's testimony does not preclude a reasonable jury from finding that the doctors' treatment constituted deliberate indifference when viewed with the remainder of the evidence.

9

permit until October 19, 2013, despite Young's difficulty climbing stairs and his request to Dr. Obaisi for such a permit. R. 156-3 at 50:6-18; 56:12-19. None of these measures were extraordinary, and the delay in their implementation is evidence of deliberate indifference.

Finally, Dr. Obaisi's failure to order an MRI could be further evidence of his deliberate indifference—rather than attempting to identify the core of Young's pain, Dr. Obaisi continued with an ineffective course of treatment. *Petties*, 836 F.3d at 730 ("If a prison doctor chooses an 'easier and less efficacious treatment' without exercising professional judgment, such a decision can also constitute deliberate indifference."); *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011) ("A prison official cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition.").

Dr. Obaisi disputes these facts, arguing that there was no clinical indication for an MRI, Young had no clinical instability requiring a knee brace or low bunk/low gallery permit before the time they were prescribed, and that Young never told Dr. Obaisi he needed a low bunk permit. R. 156 ¶¶ 40, 45, 52, 53. It is of course these disputes that must be resolved by a jury.

For these reasons, the Court finds there is a genuine dispute as to whether Dr. Obaisi was deliberately indifferent to Young's medical condition and pain.

**B. Dr. Andrew Tilden**

Dr. Tilden treated Young upon his transfer to Pontiac Correctional Center at the beginning of 2014. Like Dr. Obaisi, Dr. Tilden also argues that he was not

deliberately indifferent (1) in his referral to an orthopedic specialist; and (2) in providing sufficient pain management.

1. **Referral to Specialist**

Dr. Tilden first saw Young on February 20, 2014, just two months after Young's transfer. R. 178 ¶ 39. After Young informed him of his injury, Dr. Tilden contacted the referral coordinator to speed up the orthopedic referral. *Id.* ¶ 41. Dr. Tilden approved the orthopedic consult and Young was seen by a specialist on May 14, 2014. *Id.* ¶ 32. Based in part on the specialist's findings, Dr. Tilden authorized a permit for a low bunk/low gallery and a knee brace for Young on May 16, 2014. *Id.* ¶ 40. Dr. Tilden also timely approved Young's MRI. Young does not present any evidence that Dr. Tilden deliberately delayed these treatments, and no reasonable jury could find that Dr. Tilden was deliberately indifferent as to these treatments.

But a jury could find that Dr. Tilden was deliberately indifferent to Young's medical condition after the initial referral. For example, after the MRI in September 2014, Young did not see an orthopedist for another five months, on February 18, 2015. *Id.* ¶ 57. The orthopedist recognized the seriousness of the injury and referred Young to another specialist, Dr. Marcus. *Id.* On July 1, 2015, Dr. Marcus recommended a formal physical therapy program and stated that he wanted to follow-up with Young in three months. *Id.* ¶ 58. Young, however, received only one session of physical therapy and did not return to Dr. Marcus for another year, on July 20, 2016. R. 188 ¶ 16.; R. 174 ¶ 59. Following that visit, Young had surgery on his knee. Dr. Tureff testified that Dr. Tilden was in a position to expedite Young's care but did not do so.

R. 186-6 at 188:23-189:1. There is also evidence in the record that Dr. Tilden should have done more with respect to Young's physical therapy. Young received just one physical therapy session, despite a referral for more physical therapy. R. 187 ¶ 9. Dr. Tureff opined that Dr. Tilden should have continued Young's physical therapy with a licensed physical therapist. *Id.* ¶¶ 9. Dr. Tilden's failure to ensure Young was seeing his specialist on time and was receiving the treatment prescribed prolonged Young's pain. Accordingly, a reasonable jury could find that Dr. Tilden was deliberately indifferent to Young's medical condition after the initial referral to the specialist.

## 2. Pain Management

Young concedes that the evidence does not support that Dr. Tilden was deliberately indifferent to Young's pain management (R. 177 at 4), so the Court need not address the issue.

## Conclusion

For the foregoing reasons, Dr. Obaisi's motion for summary judgment [159] is denied. Dr. Tilden's motion for summary judgment [157] is denied. The motions to strike [185, 186] are denied.

ENTERED:

*Thomas M Durkin*
_____

Dated: March 18, 2019     Honorable Thomas M. Durkin
United States District Judge